**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ARLINGTON INDUSTRIES, INC.,

    Plaintiff,

    v.

BRIDGEPORT FITTINGS, INC.,

    Defendant.

CIVIL ACTION NO. 3:02-CV-0134

(JUDGE CAPUTO)

## MEMORANDUM

"If you think that talk is cheap, try hiring a lawyer."  Although the author behind this quote is unknown, the principle behind it is well-known to both parties here.  After years of a bitter and seemingly endless battle between Plaintiff Arlington Industries, Inc. ("Plaintiff" or "Arlington") and Defendant Bridgeport fittings, Inc. ("Defendant" or Bridgeport), both in this Court and before the Federal Circuit, I am now faced with Plaintiff's Motion for Supplemental Attorneys' Fees and Costs, Plaintiff's second request for attorneys' fees in this matter.  (Doc. 312.)  Plaintiff seeks $1,542,182.07 in attorneys' fees and $227,632.37 in costs, for a total award of $1,769,814.44.  Defendant objects to the requested award as excessive.  For the reasons that follow, Plaintiff will be awarded $1,145,230.41 in attorneys' fees and $227,632.37 in costs, for a total award of **$1,372,862.78**.

## I. Background

Arlington and Bridgeport both manufacture and sell electrical connectors.  After Arlington initiated a lawsuit against Bridgeport in 2004, the parties entered into a settlement agreement, pursuant to which Bridgeport agreed to be enjoined from making and selling certain products and their "colorable imitations."  A Confession of Judgment and Injunction was signed by the parties and entered by this Court on January 18, 2012. (Doc. 46.)  Bridgeport then redesigned its electrical connectors, and on February 3, 2012, Arlington sought a contempt order holding that these redesigned connectors violated the original agreement.  (Doc. 51.)

A contempt hearing was held on October 25-26, 2012; December 17, 2012; and February 20, 2013.  On March 19, 2013, I entered an order finding Bridgeport in

contempt of the original injunction.  (Doc. 193.)  Bridgeport appealed the contempt order to the Federal Circuit, but the Federal Circuit dismissed the appeal for lack of jurisdiction. *Arlington Indus. v. Bridgeport Fittings*, 759 F.3d 1333 (Fed. Cir. 2014).

On November 25, 2013, Arlington moved for attorneys' fees and costs incurred in enforcing the injunction.  (Doc. 222-2.)  On June 23, 2014, I issued a Memorandum and Order ("Initial Fee Order") granting Plaintiff's motion but reducing their requested award in attorneys' fees from $2,380,704.65 to $1,527,632.35.  (Docs. 283 & 284.)  I granted in full Plaintiff's request for $282,839.55 in costs.  (*Id.*)  Bridgeport appealed the Initial Fee Order, and Arlington cross-appealed.  The Federal Circuit affirmed the Initial Fee Order without an opinion.  (Doc. 300.)  Arlington now seeks attorneys' fees and costs incurred in post-trial proceedings in this Court and on both appeals in the Federal Circuit.

## II. Discussion

As the prevailing party in a contempt proceeding, Arlington is entitled to recover fees and costs "incurred in defending the propriety of the original imposition in an appeal court."  *Schauffler v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus.*, 246 F.2d 867, 870 (3d Cir. 1957).  Because it was a contempt order of this Court that was violated, this Court may assess the fees and expenses to which Arlington is entitled, "regardless of the court in which the expenses were incurred."  *Id.*

Here, Arlington seeks a total award of $1,769,814.44, consisting of $1,542,182.07 in attorneys' fees and $227,632.37 in costs.  Bridgeport opposes Plaintiff's motion, objecting to both Plaintiff's requested hourly rates and the reasonableness of the hours submitted.  Bridgeport also objects to Plaintiff's request for costs inadvertently omitted from their initial fee petition.  A hearing on Plaintiff's motion was held on June 15, 2016. Plaintiff's motion is now ripe for disposition.

## B.    Attorneys' Fees

Arlington seeks $958,207.75 in attorneys' fees incurred on two (2) appeals before the Federal Circuit, and $583,974.32 in attorneys' fees incurred during post-trial proceedings before this Court, for a total of $1,542,182.07.  In determining an appropriate

2

attorneys' fees award, the Supreme Court has held that the "most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The result of this computation is called the lodestar, and is strongly presumed to yield a reasonable fee. *Washington v. Phila. Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).

### 1. Hourly Rate

To determine a reasonable hourly rate, courts apply a burden-shifting analysis. *See Evans v. Port Auth. of N.Y.*, 273 F.3d 346, 361 (3d Cir. 2001).  First, the plaintiff bears the burden of establishing a prima facie case by producing sufficient evidence of what constitutes a reasonable market rate "for the essential character and complexity of the legal services rendered."  *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997).  If the plaintiff fails her burden to establish a prima facie case of a reasonable hourly rate, the Court must exercise its discretion in fixing a reasonable hourly rate. *Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 630 (E.D. Pa. 1998) (citing *Washington*, 89 F.3d at 1036).  If the plaintiff has satisfied this burden, the defendant may contest that prima facie case, but only with appropriate record evidence.  *Smith*, 107 F.3d at 225.  The objections must also be made with "sufficient specificity."  *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) ("*Interfaith I*").  In the absence of such evidence, the plaintiff must be awarded attorneys' fees at her requested rate.  *Id.*  Once the defendant raises objections to the fee request, the district court has a "great deal of discretion" to adjust the fee award in light of those objections. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

A reasonable market rate is "calculated according to the prevailing market rates in the relevant community."  *Id.* at 1183 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  Under the forum-rate rule, the relevant community for the prevailing market rate is generally the forum of the litigation.  *Interfaith I*, 426 F.3d at 705.  However, there are two (2) exceptions to this rule:  (1) where a case requires the "special expertise" of counsel from a distant district and (2) where local counsel are unwilling to handle a case.  *Id.*  In

either of these situations, the "relevant community" for determining a prevailing market rate is the forum in which the attorneys regularly practice.  *Id.*  Once the relevant community is established, the court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Maldonado v. Houston*, 256 F.3d 181, 184 (3d Cir. 2001).

Here, Plaintiff makes two (2) arguments.  First, Plaintiff argues that the hourly rate previously awarded by this Court should be raised to reflect the current market rate of Middle District attorneys, given the passage of two (2) years since the initial award.  Second, Plaintiff argues that the "special expertise" exception applies to counsel's work on appeal before the Federal Circuit, and that they should therefore be awarded a higher hourly rate for work done during these proceedings.  Each of these arguments will be addressed in turn.

### a.    Middle District Rates for Post-Trial Proceedings[1]

In awarding attorneys' fees, "the current market rate must be used," which is "the rate at the time of the fee petition, not the rate at the time the services were performed." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).  Accordingly, Plaintiff requests an hourly rate greater than the rate previously awarded by this Court to reflect the passage of two (2) years since the initial award.  Specifically, Plaintiff argues that hourly rates have not only increased since 2013, but that Plaintiff's counsel have gained additional experience, and that the fee award should therefore reflect these changes.  *See Keenan v. City of Phila.*, 983 F.2d 459, 476 n.18 (3d Cir. 1992) (acknowledging that determining an attorney's current hourly rates may reflect the passage of time and increase in skill).

In support of their request, Plaintiff has submitted evidence of rate increases from June 2013 through 2015 based on an individual's level of experience, including the *Laffey*

---

[1]    Here, the post-trial proceedings consist of (3) stages:  (1) litigating Bridgeport's motion to stay the sanctions proceedings; (2) litigating damages in the form of lost profits; and (3) litigating Arlington's petition for attorneys' fees and costs.

Matrix, the American Intellectual Property Law Association ("AIPLA") Reports of the Economic Survey from 2013 and 2015, and the Peer Monitor Report for Pennsylvania, all of which note rate increases from June 2013 through 2015.  (Doc. 313-14, Freedenberg Ex. A, *Laffey* Matrix; Doc. 331-7, Freedenberg Reply Ex. A, AIPLA Report of the Economic Survey 2013 ("AIPLA 2013 Report"); Doc. 331-8, Freedenberg Reply Ex. B, AIPLA 2015 Report of the Economic Survey ("AIPLA 2015 Report"); Doc. 331-9, Freedenberg Reply Ex. C, Peer Monitor Report for Pennsylvania.)

Because attorneys' fees awards must be based on the current market rate, and Plaintiff has submitted evidence of rate increases since my Initial Fee Order, Plaintiff is entitled to increased hourly rates.  *Lanni*, 259 F.3d at 149.  Based on the evidence submitted, I will apply Plaintiff's requested percentage increases, as found in the *Laffey* Matrix, to my previously awarded 2013 rate.  Accordingly, Plaintiff's counsel will be awarded the following hourly rates:

| Crowell Professionals | Previously Awarded 2013 Rate | Percentage Increase 2013-2015 | Updated 2015 Rate |
|---|---|---|---|
| Kathryn Clune | $450 | 3.2% | $464.40 |
| Jacob Zambrzycki | $280 | 3.3% | $289.24 |
| Amir Katz | $250 | 3.4% | $258.50 |
| Ali Tehrani | $220 | 3.3% | $227.26 |
| Brendan Sepulveda | N/A | N/A | $227.26 |
| Paralegals and law clerks | $120 $130 | 2.9% 2.9% | $123.48 $133.77 |

Defendant objects to the use of the *Laffey* Matrix because the *Laffey* Matrix is used for determining fees of attorneys practicing in D.C., not the Middle District of Pennsylvania.  However, the *Laffey* Matrix is only being used as one indicator of hourly rate increases.  First, the AIPLA Reports, which I referenced in my Initial Fee Order (Doc. 283, at 20-21) show rate increases ranging from 3.67% for partners at large

Pennsylvania firms (*compare* Doc. 331-7, AIPLA 2013 Report, at I-34, *with* Doc. 331-8,
AIPLA 2015 Report, at I-25), to 6.45% nationwide for sixth-year associates, and 2%
nationwide for third-year associates (*compare* Doc. 331-7, AIPLA 2013 Report, at I-48,
*with* Doc. 331-8, AIPLA 2015 Report, at I-36).  These percentage increases are greater
than those found in the *Laffey* Matrix.  Second, the Peer Monitor Report for Pennsylvania,
including Harrisburg, reflects median increases for patent litigators at 12.3% (2014) and
8.7% (2015).  (Doc. 331-9, Peer Monitor Report for Pennsylvania.)  For sixth- and third-
year associates, the Peer Monitor Report shows median increases from 3.8% and 7.8%
(2014) to 3.1% and 0.9% (2015), respectively.  (*Id.* ¶ 19.)  These percentage increases
are also greater than those found in the *Laffey* Matrix.  Furthermore, after applying the
*Laffey* Matrix percentage increases, the resulting rates are in line with the prevailing rates
in the Middle District, as evidenced by a comparison to the rates charged by Plaintiff's
local counsel, Rhoads & Sinon, LLP, in the chart below:

| Rhoads Professionals | Title | 2013 Rate | 2014 Rate | 2015 Rate |
|---|---|---|---|---|
| Robert Tribeck | Partner | $395 | $395 | $395 |
| Amanda Lavis | Associate | $295 | $295 | $295 |
| Evan Jones | Associate | $295 | $295 | $295 |
| Nicole Radziewicz | Associate | $295 | $295 | $295 |
| Johelys Cecala | Law Clerk | N/A | $150 | N/A |
| Jodie Koons | Paralegal | $170 | $170 | $170 |

Although Bridgeport notes that the rates that Rhoads charged to Arlington did not
increase in this particular matter, Attorney Tribeck declared under oath that his rates
were significantly discounted for Arlington given the large volume of cases that Arlington
has engaged his firm for, and that he had obtained blended rates for all of the Rhoads
associates.  (Doc. 313-17, Robert Tribeck Decl., ¶ 9; *see also* Doc. 246-6, Robert Tribeck
Decl., ¶ 67.)  Therefore, Rhoads' rates charged to Arlington for this particular matter do
not reflect the customary rate increases in this District.  Indeed, Attorney Tribeck declared

6

that as with most other firms, a rate increase to reflect changes in market conditions is a common annual occurrence at his firm.  (Doc. 246-6, Robert Tribeck Decl., ¶ 67.) Another local counsel, Plaintiff's fee expert, Harvey Freedenberg, similarly declared under oath that "annual increases are standard" and that his firm's standard practice is to advise clients that their hourly rates are "subject to being raised annually."  (Doc. 331-6, Harvey Freedenberg Reply Decl., ¶ 13.)  Moreover, as noted earlier, the Peer Monitor Report for Pennsylvania, which accounts for Harrisburg, also demonstrates rate increases within this District.  (Doc. 331-9, Peer Monitor Report for Pennsylvania.) Therefore, because all of the record evidence shows that rates within this District have increased over the last two (2) years, Plaintiff will be awarded their requested hourly rates as outlined in the tables above for attorneys' fees incurred as a result of the post-trial proceedings before this Court.

**b.      Special Expertise Exception for Federal Circuit Proceedings**

Although the relevant community for determining an hourly rate for Plaintiff's work in the district court proceedings is the Middle District of Pennsylvania, Plaintiff argues that the relevant community for litigating the Federal Circuit proceedings is the District of Columbia ("D.C.").  Plaintiff invokes the "special expertise" exception, arguing that the Federal Circuit is a "specialized court" that requires "special expertise," and that local counsel lacked this required expertise.

In my Initial Fee Order, I rejected Plaintiff's attempt to invoke this exception.  (Doc. 283, at 16-19.)  Although I agreed that patent litigation is a highly complex and specialized field, I found that Plaintiff failed to make the requisite showing that local counsel lacked the special expertise to represent Arlington.  (*Id.* at 16-17.)  In fact, Plaintiff did retain local counsel with the relevant expertise–Attorney Robert J. Tribeck. Attorney Tribeck, along with his firm, Rhoads, hold themselves out to be patent lawyers in the Middle District of Pennsylvania.  (*See, e.g.*, Doc. 320-27, Def. Ex. A, Tribeck Screenshot.)  Indeed, Attorney Tribeck declared that he used his patent expertise to assist lead counsel in this litigation.  (Doc. 246-6, Robert J. Tribeck Decl., ¶¶ 41, 43

7

(asserting that he assisted Attorney Clune with "discrete areas of patent law").)  Plaintiff's own fee expert, Harvey Freedenberg from McNees, Wallace & Nurick, LLC, described Attorney Tribeck as "in the top tier of intellectual property litigators who practice regularly in the Middle District of Pennsylvania."  (Doc. 222-23, Freedenberg Decl., ¶ 37.)  Attorney Freedenberg himself is also admittedly experienced in intellectual property litigation, and therefore also was viable counsel.  (Doc. 320-26, Def. Ex. Z, Freedenberg Screenshot; *see also* Doc. 222-23, Freedenberg Decl., ¶ 37 (noting that he has litigated intellectual property cases); *id.* ¶¶ 5-7 (noting that he concentrates his litigation practice in the field of intellectual property litigation, including patent cases, and has litigated in many federal district courts, including in Pennsylvania, and that he is listed in the publications *Best Lawyers in America* and *Pennsylvania SuperLawyers* in the fields of Intellectual Property Litigation and Patent Litigation).)  Therefore, Plaintiff's assertion that local counsel lacked the relevant patent expertise was belied by the fact that they retained at least two (2) local lawyers who had such expertise.  (Doc. 283, Initial Fee Order, at 17.)  Both Attorneys Tribeck and Freedenberg practice law within this District and possess the special expertise and experience needed to litigate patent cases before this Court, as evidenced by the numerous patent cases they have previously litigated in federal district courts.  (*See, e.g.*, Doc. 222-23, Freedenberg Decl., ¶¶ 5-7, 37.)  Accordingly, I held that the special expertise exception did not apply.  This decision that the exception did not apply was subsequently affirmed by the Federal Circuit.  (Doc. 300.)

Now, in seeking attorneys' fees on appeal, Plaintiff asserts that a new set of facts is before this Court, and that the special expertise exception applies because there are no Middle District attorneys with the relevant ***patent appellate*** expertise needed to litigate this case before the Federal Circuit.  (*See, e.g.*, Doc. 331-11, Supplemental Tribeck Decl., ¶ 9.)  Defendant argues that the law of the case doctrine precludes Plaintiff from re-litigating the special expertise exception.  *See In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232-33 (3d Cir. 2002) (explaining the law of the case doctrine provides "that when a court decides upon a rule of law, that decision should continue to govern the same issues

8

in subsequent stages in the same case") (citation and internal quotation marks omitted). However, the law of the case doctrine only applies when the "same issues" arise in later stages of the same litigation, and here, I am presented with a new issue of whether the special expertise exception applies to patent appellate litigation before the Federal Circuit, an issue that I have not yet been presented with.  Therefore, the law of the case doctrine does not preclude Plaintiff from making this argument.

However, Plaintiff has failed to demonstrate that the special expertise exception applies.  As a preliminary matter, many of the arguments and much of the evidence submitted by Plaintiff resembles the same arguments and evidence already rejected in my Initial Fee Order.  Although Plaintiff does raise the "new" assertion that litigating a case before the Federal Circuit requires a special expertise that other patent trial lawyers and other general appellate lawyers do not possess, Plaintiff does not offer any explanation or evidence to support this assertion or to explain what this special expertise is.  For example, there is no explanation in Plaintiff's briefs as to what special expertise is needed to litigate before the Federal Circuit that a patent trial lawyer or general appellate lawyer would not possess.  Plaintiff's briefs do not cite to any examples of what special expertise that Attorney Clune provided in this matter that another patent trial lawyer or appellate lawyer could not have provided.  Rather, Plaintiff relies exclusively on the fact that none of the local patent or appellate attorneys suggested by Defendant have *experience* litigating cases before the Federal Circuit, and therefore the exception should apply.  However, Plaintiff points to no legal authority that can support such a claim.

First, Plaintiff points to my decision in *Richards v. Client Servs., Inc.*, No. 14-cv-1402, 2015 WL 5836274, at *3 (M.D. Pa. Oct. 5, 2015), where, in approving out-of-district rates for counsel in a Fair Debt Collection Practices Act ("FDCPA") class action lawsuit, I noted the lack of experience that local counsel had in litigating FDCPA class actions. Plaintiff focuses on the following line from *Richards*:

> It is also acknowledged that where counsel in the area where the case is litigated is *lacking in experience* in the particular type of case in question, that counsel from an area where higher rates prevail, should, because of

9

their needed expertise in the type of case in litigation, be awarded a rate higher than the prevailing local rate.

*See Richards v. Client Servs., Inc.*, No. 14-cv-1402, 2015 WL 5836274, at *3 (M.D. Pa. Oct. 5, 2015) (emphasis added) (citation omitted).  However, *Richards* did not turn on the lack of experience that local counsel had in litigating before a particular court, but the lack of experience "***in the particular type of case in question***," *i.e.*, class actions.  *Id.*  It is well-established that litigating class action lawsuits calls for ***experience*** litigating class actions, given the separate set of responsibilities that are required of class counsel that are unique to class actions.  *See, e.g.*, *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (explaining the "adequacy of class counsel" requirement in Federal Rule of Civil Procedure 23 and the need for class counsel to be "experienced and qualified to prosecute the claims on behalf of the entire class").  It is not as clear, however, what unique skills or expertise are needed for counsel to represent a client before the Federal Circuit that are unique to that particular court.  While I am not ruling out the possibility that there are such unique skills or expertise and that Federal Circuit cases could potentially be construed as their own particular type of cases that require special expertise, Plaintiff has failed to explain what these unique skills or expertise are.  Absent an explanation from Plaintiff as to what this special expertise is or entails, I cannot find that they have satisfied their burden to show their entitlement to this exception.  Accordingly, Plaintiff's reliance on *Richards* is inapposite.[2]

Plaintiff also curiously cites to *Bywaters v. United States*, 670 F.3d 1221 (Fed. Cir. 2012) to invoke the special expertise exception.  (Doc. 313-1, at 9; Doc. 331, at 8.) However, in *Bywaters*, the Federal Circuit vacated the district court's award of attorneys' fees and remanded for the district court to apply the forum rate rule:

---

[2]     Plaintiff's reliance on *Richards* is also inapposite because there were no objections to the requested attorney fees in *Richards* like there are here.  *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) ("The district court cannot decrease a fee award based on factors not raised at all by the adverse party.") (citation and internal quotation marks omitted).

> In this case, the only evidence to suggest that an exception to the forum rule was applicable is Bywaters's declaration indicating that the local attorney he had originally hired to represent him was unable to help him in a "complex, specialized area of law" and that the only attorney he could find to represent him "in the whole country" was his current District of Columbia-based counsel.  J.A. 539-40.  We find Bywaters's conclusory declaration to be insufficient.  *See Schwarz v. Secy' of Health & Human Servs.*, 73 F.3d 895, 907 (9th Cir. 1995) (holding that exception to forum rule was inapplicable where the plaintiff's own declaration, the only evidence in support of an exception, showed only that she had difficulty obtaining local counsel). . . . While appellants were free to engage out-of-district counsel to represent them, the [opposing side] should not be required to subsidize their decision to do so under these circumstances.  Thus, we hold that an exception to the forum rule was not warranted in this case.

*Bywaters*, 670 F.3d at 1234.[3]  Plaintiff has cited to no other legal authority to support the proposition that the special expertise exception should apply here.  Given this lack of legal authority and absent an explanation as to what the special expertise purportedly required here is or entails, I cannot find that Plaintiff has satisfied their burden to show their entitlement to this exception. Therefore, the forum-rate rule applies and the relevant community for determining the prevailing market rate for counsel here is the Middle District of Pennsylvania.[4]  Plaintiff will be awarded the forum rates awarded for their work

---

[3]     Like in *Bywaters*, I am unpersuaded here by Plaintiff's reliance on their own declaration submitted by their Vice President, Mr. Gretz, indicating that the local attorney they had originally hired to represent them in patent litigations in this District, Michael Mey of Mey & Sulla, LLP, was unable to help them in their "complex patent matters." (Doc. 313-1, at 11.)  The mere fact that Mr. Gretz and Mr. Mey did not know offhand of any attorneys in this forum that had the patent and appellate expertise required in this matter, without more, is insufficient to demonstrate that local counsel lacked the required expertise.

[4]     Plaintiff also argued that the special expertise exception applied here given the "special expertise" that their counsel acquired in the underlying district court litigation, and emphasized Attorney Clune's experience as lead counsel for Arlington in a web of numerous interrelated district court litigations, appeals, and PTO proceedings against Bridgeport, involving the same patents, products, experts, and witnesses for over a decade.  However, I already rejected this argument when Plaintiff raised it in their initial fee petition, and will reject it again here. (Doc. 283, at 17-18.)  As explained in my previous opinion, the Third Circuit has yet to recognize an "intimate familiarity" or "institutional knowledge" exception to the forum rate rule for attorneys' fees.  Further, if experience and

done in the post-trial proceedings as outlined above.

To be clear, I do not hold today that litigating before the Federal Circuit does not require "special expertise."  Rather, my ruling is more limited to only hold that here, Plaintiff has failed to satisfy their burden of demonstrating this to be true.  For example, Plaintiff has failed to substantiate their assertion that Attorney Tribeck, a seasoned and well-respected patent litigator, did not have the special expertise to litigate before the Federal Circuit on the sole basis that he has not litigated in that court before.  They have also failed to substantiate their assertion that other local seasoned appellate lawyers suggested by Bridgeport did not have the special expertise to litigate before the Federal Circuit on the sole basis that they have not litigated in that court before.  (Doc. 322-4, Walter Grabowski Decl., ¶ 20.)[5]  In other words, absent an explanation of what special expertise an attorney with experience arguing before the Federal Circuit has, that a seasoned patent or seasoned appellate attorney does not have, that was needed to represent Arlington in this matter, I cannot find that Arlington has satisfied their burden to

---

familiarity with a particular client or matter qualified as "special expertise," then every lawyer who has performed significant services for the same client would satisfy the special expertise exception, and the exception would swallow the forum rate rule.  Because this decision was affirmed by the Federal Circuit, I see no reason to re-visit the issue again here.

[5]   In response to the local counsel suggested by Bridgeport in the Grabowski Declaration, Plaintiff submitted a declaration from their fees expert, Attorney Freedenberg, who states that he called some of these attorneys and that they stated that they did not consider themselves qualified to handle a patent case.  (Doc. 331-6, Freedenberg Reply Decl., ¶¶ 30-31.)  Putting aside the hearsay nature of this evidence, this ignores my finding in my Initial Fee Order, which was affirmed by the Federal Circuit, that these types of "[p]ost-hoc declarations or testimony" that attorneys would not have accepted the case are "insufficient to demonstrate that this case requires special expertise from a distant district."  (Doc. 283, at 18-19.)  Also as noted in my Initial Fee Order, Arlington did not argue that they qualified for the second exception to the forum rate rule, that local counsel were unwilling to handle the case.  And even if they did, this "still falls short of the kind of testimony that persuaded the Third Circuit in *Interfaith* that the second exception was met."  (*Id.* at 19 n.7.)

demonstrate their entitlement to a special expertise exception here.  Accordingly, the forum rule applies and Plaintiff will be awarded the 2015 Middle District rates noted above for attorneys' fees incurred on appeal.

### 2.   Reasonable Hours

In addition to determining a reasonable hourly rate, a court must also determine whether the number of hours spent on the litigation was reasonable.  *Public Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (citation omitted).  A court "should review the time charged, decide whether the hours claimed were reasonably expended for each of the particular purposes described, and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Id.*  A court should also reduce the number of hours requested "by the number of hours spent litigating claims on which the party did not succeed . . . and for which the fee petition inadequately documents the hours claimed." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001); *Rode*, 892 F.2d at 1183 (explaining that a court may "deduct hours when the fee petition inadequately documents the hours claimed").  Once the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request.  *Interfaith I*, 426 F.3d at 711.  However, the district court cannot decrease a fee award based on factors not raised at all by the adverse party. *Rode*, 892 F.2d at 1183.

Here, Defendant raises several objections, but the overall theme of their objections is that the time billed by Plaintiffs' counsel is excessive.  Although I do find merit to some of Defendant's objections, it should not be lost that here, Plaintiff is seeking a total of $958,207.75 for two (2) appeals, which is less than half the amount of what a single patent appeal can cost.  *See Cost & Duration of Patent Litigation*, Managing Intellectual Property, The Global IP Resource, *available at* http://www.managingip.com/Article/20894 05/Cost-and-duration-of-patent-litigation.html (Feb. 1, 2009) (explaining that appealing a patent litigation case "can add another $2 million" to a party's costs).  Plaintiff's counsel litigated two (2) full appeals plus a cross-appeal before the Federal Circuit, as well as

13

over two (2) years of post-trial proceedings, and was overall very successful in their claims against Defendant on nearly all fronts.  Additionally, far from being a trivial case in which the outcome would not affect the company at large, this was a bet-the-company case for Arlington, where the monetary value alone as of 2013 was approximately $15-$20 million.  (Doc. 246-3, Gretz Supp. Decl., ¶¶ 37-38.)  This monetary amount does not even fully address the irreparable harm to Arlington's reputation and goodwill that was caused by Bridgeport's continued infringement of Arlington's patents.  Arlington's 380ST and 38AST models alone, which were the models at issue in this litigation, make up approximately ten percent (10%) of Arlington's total gross revenue.  (*Id.* ¶ 31.)  As explained by Chief Judge Connor in related litigation between the two parties, the value of the injunction that Arlington sought to defend on both appeals was priceless given the importance of the products at issue to Arlington, particularly in a two-supplier market wherein Arlington and Bridgeport are direct market competitors:

> Arlington and Bridgeport are direct market competitors in a two-supplier market, contending for the business of 5,000 nationwide distributors of quick-connect electrical fittings.  Each sale of a Bridgeport connector likely deprives Arlington of market share, revenue, and brand recognition.  In light of these market dynamics, the court concludes that Bridgeport's infringement has seriously affected Arlington's market position.

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:01-cv-0485, Doc. 776, at 8 (Mar. 9, 2010).  (*See also* Doc. 246-3, Gretz Supp. Decl., ¶ 33 ("Due to the importance of getting Bridgeport's infringing Accused Connectors off the market, the contempt proceeding's value to Arlington was ***worth much more than the damages*** that Arlington stands to collect from Bridgeport.") (emphasis added).)  Therefore, it is not unreasonable that Arlington's counsel would expend the time that they did on such a bet-the-company type of case like this one.  With this in mind, I will now turn to Defendant's objections.

First, Bridgeport objects to Plaintiff's bills for not allocating time between tasks, *i.e.*, "block billing."  Block billing refers to the practice of grouping several tasks together into a single time entry, without specifying the amount of time spent on each particular task. *Simring v. Rutgers*, 634 F. App'x 853, 859 (3d Cir. 2015).  As stated in my Initial Fee

Order, I do not reject block billing as a time-keeping method.  (Doc. 283, at 11.)  As explained by the Third Circuit, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted."  *Rode*, 892 F.2d at 1190. Although block billing "makes it more difficult for courts to review hours expended because we do not know how many hours a lawyer spent on a discrete task," engaging in the practice is not ***per se*** unreasonable.  *Simring*, 634 F. App'x at 859.  Block billing "will be upheld as reasonable as long as the listed activities reasonably correspond to the number of hours billed."  *See Schlier v. Rice*, No. 3:04-cv-1863, 2009 WL 5182164, at *6 (M.D. Pa. Dec. 22, 2009) ("[B]lock billing is a common practice which itself saves time"); *see also Rode*, 892 F.2d at 1190 (explaining that specificity should only be required to the extent necessary for a court "to determine if the hours claimed are unreasonable for the work performed")*; United States v. NCH Corp.*, Nos. 98-5268, 05-881, 2010 WL 3703756, at *4 (D.N.J. Sept. 10, 2010) (noting that block billing will be upheld as long as "the listed activities reasonably correspond to the number of hours billed").

Therefore, in evaluating each of Bridgeport's specific objections below, I will take into account whether Arlington's counsel's use of block billing in relation to those particular objections allow for me to determine whether the hours billed were reasonable or not.  However, I will not accept Bridgeport's blanket objection to nearly all of Arlington's time entries for failing to allocate the time spent on each particular task.   An example of one of these objections is copied below:

| DATE | TASK/OBJECTION | HOURS/CHARGE | |
|---|---|---|---|
| 4/18/2013 | Review notice of appeal;<br>Confer w/ team re same;<br>Conduct initial research re same<br><br>**Objection:**<br>The hours expended are unreasonable & excessive.<br>The bill does not allocate the time between tasks. | 3.00 | $2,100.00 |

(Doc. 322-9, Phillips Ex. A, Objections to Attorney Clune's Time Entries, at 1.)

These generic objections, which can be found in response to nearly all of

Arlington's time entries, are not helpful.  They also fail to meet the Third Circuit's particularity requirements for objections.  The Third Circuit has explained that an objecting party must make a "***sufficiently specific objection***" to a time entry before a reduction for excessiveness may be made.  *United States v. Eleven Vehicles, Their Equipment & Accessories*, 200 F.3d 203, 211 (3d Cir. 2000).  Here, Defendant's general and conclusory objections to nearly all of Plaintiff's time entries as excessive fails to meet this specificity requirement.  In the example above, Defendant fails to explain why three (3) hours of time is unreasonable for lead counsel to confer with her team about Bridgeport's appeal and to conduct initial research for the appeal.  Three (3) hours for these tasks do not strike me as unreasonable, and Bridgeport does not offer any suggestion of why it is unreasonable or what would be a more reasonable amount of time.  Nor does Bridgeport offer a comparison of their hours billed for similar tasks to suggest why Plaintiff's counsel hours are unreasonable, as some parties have helpfully done in other cases.  Although there is no specific guide mandating that Defendant submit particular types of evidence in support of these objections, the law is clear that Defendant must include ***some*** specificity within their objections to explain why the time submitted should be reduced, not simply a blanket assertion that all time entries are excessive.  *See, e.g.*, *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720-21 (3d Cir. 1989) ("Turning to the required level of detail, we emphasize that the adverse party's submissions cannot merely allege in general terms that the time spent was excessive.").  In order for an objection to be sufficiently specific, the Third Circuit has explained that it must be clear in the following two (2) respects:

> First, they must generally identify the type of work being challenged, and second, they must specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable.  The briefs must be specific and clear enough that the fee applicants have a fair chance to respond and defend their request.

*Bell*, 884 F.2d at 720.

Bridgeport has apparently misconstrued the Third Circuit's language in *Evans v.*

16

*Port Authority of N.Y. & N.J.*, 273 F.3d 346 (3d Cir. 2001) that courts should "go line, by line, by line" through the billing records in analyzing fee requests, *id.* at 362, to mean that Bridgeport should similarly "go line, by line, by line" and make an objection to every single line in Arlington's time entries.  That is not the case.  Such an approach would defy common sense and result in an impractical and unnecessary waste of resources, whereby both parties expend exorbitant amounts of time and money objecting to and defending every single line of the time records, only for a court to then do the same. Additionally, such an approach has been expressly condemned by the Third Circuit.  The more appropriate approach, as suggested by the Third Circuit, would be for objecting parties to specify with particularity the reason for their challenge and the ***categories*** of work being challenged.  *Bell*, 884 F.2d at 720.  The objecting parties "need not point to each individual excessive entry" since doing so would result in the overly burdensome exercise that Bridgeport has forced themselves, Arlington, and this Court to engage in. *Id.* ("It would be nearly impossible, or at least extraordinarily burdensome, for parties who wish to contend that the time spent by a fee applicant was excessive . . . to point to all the entries that they believe to be unreasonable.").  With this in mind, I will reject Bridgeport's general objection to all entries on the basis of excessiveness and proceed to examine their more specific objections.

Second, Bridgeport objects to entries where Arlington attorneys billed for non-legal tasks.  As I explained in my Initial Fee Order, hours spent performing non-lawyer tasks that could have been delegated are not recoverable.  (Doc. 283, Initial Fee Order, at 14 (reducing Attorney Clune's time by 1.5 hours for performing tasks such as sending letters via FedEx and e-mail in December 2011 and for updating a schedule in July 2012, and reducing Attorney Katz's time by 1 hour for adding color images to a document on February 15, 2012).)  *See Halderman v. Pennhurst St. Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1994) ("We cannot condone the wasteful use of highly skilled and highly priced talent for matters easily delegable . . . ").  Here, Attorney Clune again billed her usual

17

hourly rate of Seven Hundred Dollars ($700.00) for "tak[ing] rebuttal slides to Kinkos for copying as requested by [the] Court."  This was a non-lawyer task that Attorney Clune could have delegated.  Attorney Clune's submitted time will be reduced by **0.5 hours**.

Third, Bridgeport objects to Arlington's preparation of a more than 150-page PowerPoint presentation for oral argument as excessive.  I do not agree with Bridgeport that the mere fact that the presentation was over 150 pages makes it excessive.  Several of the pages only included one or two sentences or simply depicted graphs and other helpful visuals to aid the Court in streamlining the hundreds of pages of briefs, declarations, and other documents that have been filed in connection with this fee petition.  After reviewing this presentation, it is clear that it required a great deal of work. Upon reviewing the time records, I do not find that the time submitted was excessive.

Fourth, Bridgeport objects to Attorney Tribeck's time entries for lacking "any specific description of tasks performed."  (*See* Doc. 322-8, Bruce Phillips Decl., ¶ 39.) Here, nearly all of Attorney Tribeck's time entries include vague descriptions such as "review documents & memos" without identifying which documents he is referring to or what they pertain to.  (*See* Doc. 283, at 14-15.)  Attorney Tribeck has continued to engage in the same practice of submitting vague time entries that I had previously rejected in my Initial Fee Order, and in other fee disputes as well.  (*See* Doc. 283, at 14-15.)  *See also Souryavong v. Lackawanna Cnty.*, Nos. 13-cv-1534, 13-cv-1581, 2016 WL 374462, at *15-*16 (M.D. Pa. Feb. 1, 2016) (disregarding vague time entries); *Dee v. Borough of Dunmore*, No. 3:05-cv-1342, 2013 WL 685144, at *7 (M.D. Pa. Feb. 25, 2013) (same); *Jama Corp. v. Gupta*, Nos. 3:99-cv-01624, 3:99-cv-1574, 2008 WL 108671, at *7 (M.D. Pa. Jan. 4, 2008) (disregarding vague time entries that "include[d] broad statements such as 'Review litigation documents,' "Review documents for Exhibit list,' 'Review pleadings,' 'Review trial exhibits,' and 'Review trial exhibits & documents.'"). For the same reasons outlined in my Initial Fee Order, I will again reduce Attorney Tribeck's time here based on vague entries, such as "review documents & memos" without identifying what they pertain to.  (*See* Doc. 283, at 14-15.)  Accordingly, I will

reduce Attorney Tribeck's time by a total of **25.0** hours.

Fifth, Bridgeport argues that because Plaintiff did not recover all of the attorneys'
fees they requested in their initial fee petition, Plaintiff should not be able to recover the
fees incurred in litigating the initial fee petition.  I disagree.  Plaintiff was successful in
recovering most of the attorneys' fees they requested.  My reduction of various time
entries and adjustment of the hourly rates does not deny that Plaintiff was overall
successful in their claim for attorneys' fees.  As explained by the Supreme Court, a
prevailing plaintiff should not be denied attorneys' fees simply because some of the
contentions raised were not successful:

> Where the plaintiff has failed to prevail on a claim that is distinct in all
> respects from his successful claims, the hours spent on the unsuccessful
> claim should be excluded in considering the amount of a reasonable fee.
> Where a lawsuit consists of related claims, a plaintiff who has won
> substantial relief should not have his attorney's fee reduced simply because
> the district court did not adopt each contention raised.

*Hensley*, 461 U.S. at 440.  The issues of reducing time entries and hourly rates were not
"distinct in all respects" from Plaintiff's successful claim for attorneys' fees.  *Id.*
Accordingly, Bridgeport's objection will be overruled.

Next, Bridgeport argues that Arlington is not entitled to fees relating to their failed
cross-appeal and other aspects of the two (2) appeals they lost, including their motion to
dismiss, motion to change the oral argument date, and motion to strike.  *See, e.g.*, *Rode*,
892 F.2d at 1183 ("[T]he court can reduce the hours claimed by the number of hours
spent litigating claims on which the party did not succeed and that were distinct in all
respects from claims on which the party did succeed.") (citation and internal quotation
marks omitted).  However, as cautioned by the Supreme Court and reiterated by the
Third Circuit Court of Appeals, "courts should not reduce fees simply because some of a
prevailing party's related claims are unsuccessful."  *McKenna v. City of Phila.*, 582 F.3d
447, 457 (3d Cir. 2009) (citing *Hensley*, 461 U.S. at 434-35); *see also Watcher v.
Pottsville Area Emergency Med. Serv., Inc.*, 559 F. Supp. 2d 516, 536 (M.D. Pa. 2008)
(explaining that fees should not be apportioned when the plaintiff "has obtained excellent

results" even though he "failed to prevail on every contention raised in the lawsuit" or when he achieved his desired outcome without succeeding on every alternative legal ground for that outcome).  Overall, Arlington was successful in defending their claim of contempt on appeal.  Accordingly, this objection will be overruled.

Additionally, Bridgeport argues that Arlington's fees on appeal were excessive.  Specifically, Bridgeport points to the fact that Arlington's attorneys billed over $300,000.00 on the first appeal and almost $190,000.00 on the second appeal, even though seventy-three (73) pages of the principal brief in the second appeal were virtually identical to eighty-one (81) pages of the principal brief in the first appeal.  However, upon review of these briefs, I do not find that these pages are "virtually identical" and that although there is some overlap, Arlington's counsel acted reasonably in reviewing Bridgeport's reply brief from the first appeal and revising their opening brief in the second appeal to address Bridgeport's reply arguments, which required additional legal research, case distinctions, and other revisions.  (*Compare* Doc. 320-7, Florence Ex. G, *with* Doc. 320-14, Florence Ex. N; *see also* Doc. 331, at 18.)  Moreover, several issues were only addressed in Arlington's opening brief in the second appeal, including arguments concerning this Court's sanctions award, which included lost profits, costs, and fees. (Doc. 320-14, Florence Ex. N, at 73-96.)  Thus, notwithstanding some overlap between the two (2) opening briefs in the appeals, it is reasonable that counsel expended significant additional effort for the second brief.

Bridgeport also asserts that the 109 hours Attorney Zambrzycki charged for reviewing Bridgeport's principal brief was excessive.  This is a mis-characterization of the time records, since the time entries totaling these 109 hours actually represents time spent on several other tasks as well, such as conferring with Attorney Clune about the brief, drafting Arlington's response to the brief, distinguishing cases, and conducting additional research.  However, parties who engage in repeated block billing in such a way that makes it impossible for a court to determine whether the time billed to a particular task is reasonable bear the risk of having their time reduced.  *See, e.g.*, *Dixon-Rollins v.*

20

*Experian Info. Sols., Inc.*, No. 09-646, 2010 WL 3734547, at *5 (E.D. Pa. Sept. 23, 2010) ("If a block entry is confusing or makes it difficult to allocate a reasonable time to a specific task, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion.") (citation and internal quotation marks omitted); *see also Hines v. City of Albany*, 613 F. App'x 52, 55 (2d Cir.2015) (concluding that the district court did not abuse its discretion in making an across-the-board thirty percent (30%) reduction of requested attorneys' fees because the attorneys' block-billed time entries "frustrated meaningful review of the reasonableness of the claimed hours"); *Jones v. Southpeak Interactive Corp. Of Delaware*, No. 3:12-cv-443, 2014 WL 2993443, at *9 (E.D. Va. July 2, 2014), *aff'd*, 777 F.3d 658 (4th Cir. 2015) (applying a ten percent (10%) across-the-board reduction to account for the block billing in the attorneys' records).  In reviewing the time entries and taking into account that these time entries account for tasks other than simply reviewing Bridgeport's principal brief, I find that this time billed is excessive.  Accordingly, I will reduce the 109 hours billed by Attorney Zambrzycki by one-third, resulting in a reduction of **36.33** hours.

Next, Bridgeport objects to most of Arlington's time as duplicative.  Specifically, Bridgeport points to over 102.25 hours Attorney Zambrzycki charged for preparing for oral argument in the second appeal, which he did not argue.  Bridgeport argues that this is excessive and duplicative, particularly given Attorney Clune's nearly fifty (50) hours preparing for oral argument while Attorney Zambrzycki was also preparing.  However, "[a] reduction for duplication is warranted only if the attorneys are ***unreasonably*** doing the ***same*** work."  *Rode*, 892 F.2d at 1187.  Here, Attorneys Clune and Zambrzycki were not doing the same work.  For example, here, Attorney Zambrzycki researched various legal and factual issues and prepared moot court questions and answers, while Attorney Clune reviewed and analyzed Attorney Zambrzycki's research, practiced the moot court questions and answers, and practiced and developed her oral argument.  (Doc. 331, at 23.)  It is more than reasonable for two attorneys to prepare for oral argument even if only one of them is ultimately making the argument.  *McKenzie v. Kennickell*, 645 F. Supp.

21

437, 450 (D.D.C. 1986) ("[T]here is no reason or authority for allowing only one lawyer to charge for time that more than one lawyer justifiably spent."); *Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*, 599 F. Supp. 509, 518 (S.D.N.Y. 1984) ("[D]ivision of responsibility may make it necessary for more than one attorney to attend activities such as depositions and hearings.").  Bridgeport's objection will be overruled.

Bridgeport also argues that Arlington is not entitled to fees incurred in correcting their mistakes in the multiple corrected motions they had to file in the Federal Circuit, emphasizing that Arlington cannot seek higher rates for out-of-district counsel claiming to have "special expertise," yet bill extra time for correcting mistakes in a court that counsel purports to have special expertise in.  *See Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir. 1989) ("Excessiveness of time spent in light of an applicant's expertise is a legitimate reason for reducing a fee award.").  Arlington rebuts that submission of corrected briefs is a common practice specifically encouraged by the Federal Circuit Rules in order to correct "non-substantive errors."  Arlington emphasizes that the Rules do not permit parties to make any substantive edits to correct "mistakes," but encourages the correction of citations to the record and to legal authority, as well as the elimination of typographical errors.  This allows for a party to focus on the merits of their argument without rushing to meet the filing deadline, and then fix typographical changes in the few days following the deadline, such as record cites.  In other words, filing these corrected briefs does not call into question counsel's Federal Circuit expertise (which they have not established anyway), but their knowledge of rules specific to the Federal Circuit and how to use them to their advantage.  If anything, the need to file these corrected briefs only reflects the diligence of counsel in not catching these errors earlier.  However, spending time on making these corrections did not result in additional costs, as it merely permitted parties additional time to perform their final proofreading, which they would have done anyway.  In other words, the only thing that changes is whether the time is spent before the filing deadline or after.  Accordingly, this objection will be overruled.

In sum, for the reasons outlined above, I will reduce Attorney Clune's time by **0.5** hours, Attorney Tribeck's time by **25.0** hours, and Attorney Zambrzycki's time by **36.33** hours.  After reducing these hours from Plaintiff's submitted time and applying the 2015 Middle District rates noted above,  I find that Plaintiff is entitled to a total award of **$1,145,230.41** in attorneys' fees.

### 3.    Adjustment from the Lodestar

As a final note on attorneys' fees, I will address Plaintiff's argument that their attorneys' fees are reasonable in light of the success they were able to achieve and the quality of their counsel's work.  (Doc. 313-1, at 27 (listing issues they prevailed on in this litigation).)  Although I acknowledge the quality of Plaintiff's counsel's work and the success obtained, I find that an award based on the lodestar above is appropriate and decline to depart from this calculation.  The Third Circuit has reiterated the "strong presumption that the lodestar is a reasonable fee" and that "a quality multiplier should be granted only in rare and exceptional circumstances."  *Student Pub. Interest Research Grp. of N.J., Inc. v. AT&T Bell Labs.*, 842 F.2d 1436, 1452-53 (3d Cir. 1988) (affirming the district court order that "despite its excellent quality, the representation did not approach the high threshold necessary" to depart from the lodestar) (citation and internal quotation marks omitted).  Notwithstanding the excellent work in this case, I do not find this to be one of those "rare and exceptional circumstances."  *Id.*  Accordingly, Plaintiff's award of attorneys' fees will be based on the lodestar calculated above.

## C.    Costs

As the prevailing party, Plaintiff may recover reasonable costs incurred in prosecuting their contempt action.  *See Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113-14 (3d Cir. 1970) ("In a contempt proceeding, the court may, in its discretion, award expenses, costs, and fees to the petitioner."); *see also* Fed. R. Civ. P. 54(d)(1) (providing that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party").  Under Rule 54(d)(2) of the Federal Rules of Civil Procedure, Plaintiff may also recover "related non-

taxable expenses," which may include "costs for postage, telephone, expert fees, travel, deposition transcripts, shipping, parking, lodging and food." *Bowers v. Foto-Wear, Inc.*, No. 3:cv-03-1137, 2007 WL 4086339, at *5 (M.D. Pa. Nov. 15, 2007).  The costs incurred, however, "are subject to the Court's determination that they are reasonable and necessary." *Apple Corps. v. Int'l Collectors Soc'y*, 25 F. Supp. 2d 480, 497 (D.N.J. 1998). The fee applicant has "the burden of adequately documenting and itemizing the costs requested." *Id.*

Arlington was previously awarded $282,839.55 in costs incurred through October 31, 2013.  (Doc. 283, at 28.)  Now, post-appeal, Arlington seeks an additional $227,632.37 in costs.  (Doc. 312, at 2.)  Specifically, Arlington asserts that since March of 2013, they have incurred $35,427.53 in additional out-of-pocket expenses including for lodging and travel, facsimile, long distance telephone calls, Federal Express and other postage, legal research, and vendor fees; $34,525.50 in expert fees for Mark Gallagher; and $33,792.60 in expert fees for Harvey Freedenberg.  (Doc. 313-1, at 28 (citing Exs. E-H).)  Arlington also seeks costs inadvertently omitted from their initial fee submission, as they notified this Court during the June 2014 hearing, which consists of $41,053.41 paid to their technical expert Dr. Christopher Rahn, and $84,503.36 to their graphics vendor. Arlington asserts that these costs were inadvertently omitted because the invoices were paid directly by Arlington, and therefore did not appear on Crowell's invoices.  Arlington seeks a total amount in costs of $227,632.37, which includes costs incurred by Arlington from March 2013 through September 2015, as well as the inadvertently omitted costs noted above.

Bridgeport objects to Arlington's request for costs inadvertently omitted from their initial fee submission, arguing that the fact that the costs were overlooked because they were paid directly by Arlington is not a sufficient excuse for inadvertently omitting them. Bridgeport also argues that it is unreasonable that these costs could have been "inadvertently overlooked" given their magnitude.

Arlington will be awarded their request for inadvertently omitted costs.  Bridgeport

does not cite to any legal authority to support their proposition that a party may not recover reasonable costs incurred that a party otherwise would be entitled to simply because the costs were inadvertently omitted in the initial fee petition.  As for Bridgeport's accusation that Arlington's failure to include these costs could not have been inadvertent, I have no reason to believe, and Bridgeport has provided me with no reason to believe, that Arlington intentionally omitted these costs.  Additionally, Bridgeport incorrectly asserts that Arlington did not previously suggest that they had incurred additional costs on the merits.  (*Compare* Doc. 322-1, at 23, *and* Doc. 299, June 4, 2014, Hr. Tr., at 55:4-56:2; Doc. 288, at 1.)  Therefore, Arlington is entitled to the $125,556.77 in costs inadvertently omitted from their initial fee submission, which consists of $41,053.41 in fees for their expert Dr. Rahn and $84,503.36 in fees for their graphics vendor Resonant Legal Media ("RLM").

Bridgeport also objects to Arlington's request for the remaining $103,745.63 in costs incurred post-appeal.  Specifically, Bridgeport argues that the costs incurred by Dr. Rahn for re-preparing testimony for hearings was unreasonable.  However, as Plaintiff points out, the rebuttal hearing occurred months after the parties put on their direct examinations, and therefore the preparation was a significant undertaking, as evidenced by the detail and scope of Dr. Rahn's presentation slides, which addressed each of Bridgeport's two (2) experts' arguments.  Therefore, I will not deduct any hours from Dr. Rahn's time entries.

Bridgeport also objects to Arlington's request for $84,503.36 in costs from RLM, which included fees for preparing demonstratives, animations, graphics, slides, and other visual aides for the two-day hearing, as well as the costs of on-site assistance by RLM's trial director, and itemized out-of-pocket and travel costs.  These expenses are reasonable and sufficiently documented.  Therefore, no reduction is necessary. Bridgeport objects that Arlington's documentation is insufficient because original invoices have not been provided.  I have already rejected this objection in my Initial Fee Order and will reject it again here.  (Doc. 283, at 27.)  Although Arlington has not submitted invoices

from vendors or third parties to substantiate the alleged costs, I find that the records submitted are sufficiently detailed and that the above costs are reasonable.

Finally, Bridgeport objects to Arlington's request for "new" costs incurred in connection with post-trial proceedings and appeals, claiming that these new costs should be reduced because Arlington did not prevail on all of the arguments underlying its successful contempt claim.  Bridgeport relies on my decision in *Watcher* to assert that costs are only "apportioned between successful and unsuccessful claims just as attorneys' fees are."  *Watcher*, 559 F. Supp. 2d at 536.  However, here, Arlington was successful in their claim for contempt in all respects:  Arlington obtained a finding of contempt, enforcement of its injunction, and sanctions that totaled over two million dollars ($2,000,000.00).  Bridgeport argues that Arlington was unsuccessful on various motions, such as their motion to dismiss the first appeal and a motion to change a hearing date in the first appeal, and that costs related to these losing efforts should be deducted.  However, these motions were all related to Arlington's successful claim for contempt.  A motion to change a hearing date is not a claim.  Additionally, it is within my discretion to apportion costs between prevailing and non-prevailing claims as I see fit.  *Id.* at 535-36; *see also Hensley*, 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.").  Moreover, "courts should not reduce fees simply because some of a prevailing party's ***related*** claims are unsuccessful."  *McKenna v. City of Phila.*, 582 F.3d 447, 457 (3d Cir. 2009) (citing *Hensley*, 461 U.S. at 434-35).  Rather, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Hensley*, 461 U.S. at 435.

Here, I find that these ancillary motions, such as the motion to dismiss and the motion to change a hearing date, were part of Arlington's overall successful claim in moving for contempt.  Therefore, these costs are recoverable.  Accordingly, Arlington is entitled to their costs in full, and will be awarded **$227,632.37** in costs.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion for supplemental attorneys' fees and expenses (Doc. 312) shall be granted.  Plaintiff shall be awarded $1,145,230.41 in attorneys' fees and $227,632.37 in costs, for a total award of **$1,372,862.78**.

An appropriate order follows.


June 28, 2016                                        /s/ A. Richard Caputo
Date                                                      A. Richard Caputo
                                                              United States District Judge

27