**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ARLINGTON INDUSTRIES, INC., | |
| Plaintiff, | CIVIL ACTION NO. 3:02-CV-0134 |
| v. | (JUDGE CAPUTO) |
| BRIDGEPORT FITTINGS, INC., | |
| Defendant. | |

**MEMORANDUM**

Presently before the Court is a Motion for an Order to Show Cause why Defendant Bridgeport Fittings, Inc. should not again be held in contempt of this Court. (Doc. 334.) For the reasons that follow, Plaintiff's Motion will be granted in part and denied in part, and a contempt hearing will be scheduled.

**I. Relevant Background**

On March 19, 2013, this Court held Defendant Bridgeport Fittings, Inc. ("Bridgeport") in contempt of court for violating the Confession of Judgment and Injunction (Doc. 47) signed by Bridgeport and Plaintiff Arlington Industries, Inc. ("Arlington") as part of a 2004 settlement agreement. Specifically, the Court found that Bridgeport's line of connectors known as the "Whipper-Snap" 380SP and 38ASP violated the 2004 injunction, and entered a new permanent injunction (the "2013 Injunction" or "Injunction") enjoining:

> [Bridgeport], its officers, agents, attorneys, servants, employees, successors, assigns, and all those in active concert or participation with them . . . from directly or indirectly making, using, selling, offering for sale or import or causing or inducing others to make, use, sell, offer to sell, or import the Whipper-Snap 380SP and 38ASP model connectors during the remaining term of U.S. Patent No. 6,335,488.[1]

(Doc. 193.) After the 2013 Injunction was entered, Bridgeport notified its independent sales representatives to immediately cease all sales, marketing, and advertising of the enjoined

---

[1] The '488 patent does not expire until January 15, 2018. (Br. in Supp. 11 n.1, Doc. 337..)

products. (Br. in Opp'n 2, Doc. 350.) However, as Bridgeport admits, in April 2016 an employee of Wm. Bleiman & Sons, Inc. ("Bleiman"), one of Bridgeport's independent sales representatives, delivered a discontinued Contractor Innovation Demo Kit ("Demo Kit") containing an enjoined 38ASP connector to United Electric Supply ("United Electric"), a large electrical distributor. (*See id.* at 6-9; Rivera Decl. ¶ 4, Doc. 351.) The Demo Kit was found by an employee of one of Arlington's independent sales representatives on a display counter at United Electric on April 22, 2016. (*See* Fetzer Decl. ¶ 9, Doc. 335.) Bridgeport contends that this was an innocent and isolated mistake by Bleiman which has since been remedied, and argues that the employee was neither authorized nor instructed to deliver the Demo Kit to United Electric by either Bridgeport or Bleiman's President and, therefore, Bridgeport cannot be found in contempt for this incident. (Br. in Opp'n 9.)

In addition to finding the Demo Kit on display at United Electric, Arlington contends that Bridgeport is violating the 2013 Injunction by creating and providing online marketing materials, including images of the enjoined connectors, to distributors for use in sales or offers to sell the enjoined connectors, and that these materials cause or induce Bridgeport's distributors to sell and/or offer those products for sale. (Br. in Supp. 11, Doc. 337; Reply Br. 17, Doc. 361.) Finally, Arlington asserts that Bridgeport further violated the 2013 Injunction by shipping enjoined connectors to a large electrical distributor after the Injunction issued on March 19, 2013. (Reply Br. 19.)

## II. Legal Standard

### A.   Motion for an Order to Show Cause

The Court has the inherent power to enforce compliance with its orders through civil contempt. *Spallone v. United States*, 493 U.S. 265, 276 (1990). A party seeking to initiate

contempt proceedings may do so by filing a motion for a show-cause order.[2] A motion for an order to show cause, which is distinct from a motion for an order on the merits of the alleged contempt, is "asking *only* for a preliminary order directing the alleged contemnor to show cause why the court should not find him in contempt." *SEC v. Hyatt*, 621 F.3d 687, 696 (7th Cir. 2010) (emphasis in original). "The purpose of [a show-cause] motion is to persuade the court that there should be a hearing at which the factfinder will ultimately evaluate whether a finding of contempt is appropriate on the evidence presented." *Sommerfield v. City of Chi.*, 252 F.R.D. 407, 413 (N.D. Ill. 2008). Thus, a district court may exercise its civil contempt power after: (1) the moving party files a motion that requests the court issue an order to show cause why the defendant should not be found in civil contempt. The motion must cite the injunctive provision(s) at issue and sufficiently allege that the purported contemnor has refused to obey its mandate; (2) if satisfied that the motion states a case of noncompliance, the court grants the order and schedules a contempt hearing; and (3) at the hearing, if the moving party proves what it alleged in its motion by clear and convincing evidence, the court determines the sanctions necessary to ensure the contemnor's future compliance. *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000).

"The burden of establishing the appropriateness of a [contempt] hearing is less demanding than that for establishing contempt". *United States v. Capital Tax Corp.*, No. 04-CV-4138, 2012 WL 1965982, at *3 (N.D. Ill. May 31, 2012) (citing *Sommerfield*, 252 F.R.D. at 413). The moving party must allege conduct which, if true, would violate the court's prior order. *See Wyatt ex rel. Rawlins v. Sawyer*, 80 F. Supp. 2d 1275, 1278 (M.D. Ala. 1999) (quoting *Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990)). The allegations must be "sufficiently definite, specific, non-conjectural and detailed enough [for the district court] to

---

[2] Although the Federal Rules of Civil Procedure "largely eliminated the need to seek show-cause orders," when a party chooses to initiate a civil contempt proceeding via a motion for an order to show cause, courts generally should give the motion its "historical and literal meaning. . . ." *SEC v. Hyatt*, 621 F.3d 687, 695-96 (7th Cir. 2010).

conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *Sommerfield*, 252 F.R.D. at 414; *see also In re Vista Marketing Grp. Ltd.*, No. 12-B-83168, 2014 WL 1330112, at *3 (Bankr. N.D. Ill. Mar. 28, 2014) ("For the [show-cause] order to issue, the requesting party need not establish by clear and convincing evidence the violation of 'the express and unequivocal command of a court order,' but only satisfy its threshold burden of presenting facts that 'implicate defendants in violation of the court's order.'") (quoting *In re Res. Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010) and *Sommerfield*, 252 F.R.D. at 413)). The "mere insist[ence] on a hearing is never enough"; the moving party must present some facts that indicate the defendant is in violation of the court's order. *Sommerfield*, 252 F.R.D. at 414.

### III. Discussion

The issue presented in the instant Motion is whether Arlington has presented sufficiently definite facts that implicate Bridgeport in violation of the Court's prior order and warrant a contempt hearing. Because Arlington has asserted definite allegations, supported by specific facts, which indicate Bridgeport may have violated this Court's prior order with respect to the Demo Kits and the online marketing materials, its Motion for an Order to Show Cause will be granted on those two grounds only.

**A. The Demo Kit Incident**

At the center of Arlington's Motion is its discovery of a Bridgeport Demo Kit containing an enjoined connector and product literature on a display counter of a large electrical distributor in April 2016 (the "Demo Kit Incident"). The record indicates that Bridgeport commissioned 168 Demo Kits containing an enjoined 38ASP connector in the Summer of 2012, 100 of which were supplied to Bleiman in the Fall of that year. (Second Suzio Decl. ¶¶ 3-4, Doc. 353; *id.* Ex. B, Doc. 353-2.) After the 2013 Injunction issued, Bleiman remained in possession of at least "several" of these Kits. (Bleiman Decl. ¶ 5, Doc. 340.) Although Bridgeport informed Bleiman not to sell or advertise the

enjoined products or distribute product literature referencing those products, there is no indication that Bridgeport ever requested Bleiman to return or destroy the Demo Kits. It is uncontested that one of these Demo Kits was delivered by a Bleiman employee to United Electric well after the 2013 Injunction was issued, for the purpose of facilitating sales with United Electric. (*See* Rivera Decl. ¶¶ 4, 6.) This Demo Kit was subsequently found on a display counter at United Electric by one of Arlington's sales representatives. (*See* Fetzer Decl. ¶ 1, 9.)

Bridgeport acknowledges that Mr. Rivera made a mistake by placing the Demo Kit on display at United Electric. (*See* Bleiman Decl. ¶¶ 10-13.) However, it argues that: (1) Bridgeport cannot be held responsible for Bleiman's employee's actions, or, if Bridgeport is found responsible for these actions, (2) the Court should not hold Bridgeport in contempt because it has substantially complied with the Injunction. (Br. in Opp'n 18-20, 21-22.) But with respect to Arlington's present Motion, the claims and supporting facts regarding the Demo Kits sufficiently allege that Bridgeport has violated this Court's prior order. It is uncontested that a Bridgeport sales representative had access to an enjoined connector and placed the prohibited item on display at a large electrical distributor for the purpose of facilitating the sale of Bridgeport products. The record also indicates that other Demo Kits containing an enjoined product are potentially in the possession of other sales representatives. These facts warrant a contempt hearing. Whether Bridgeport is responsible for Bleiman's actions, and whether it substantially complied with the Injunction, will be decided at that time.

**B. Online Marketing Materials**

Arlington also contends that Bridgeport violated the 2013 Injunction by failing to ensure that its own marketing materials were removed from its distributors' websites, thereby inducing the sale, offers for sale, and use of the enjoined connectors. In support

of its argument, Arlington submitted screenshots of various electrical supply distributors' websites that appear to contain the same standardized image and product information of the enjoined connectors. (*Compare* Clune Decl. Ex. G., Doc. 358, *with* Gretz Decl. Ex. 1, 4, 5, 6, 7, Doc. 336 (showing an example of Bridgeport-generated images of the enjoined connectors, which appear to be the same images used on the distributors' websites).) At a November 17th hearing, Arlington presented screenshots that appear to display the same stock image of the 38ASP connector on the following distributors' websites as of May 2016: Elliot Electric Supply, Crescent Electric, North Coast Electric, Electric Supply, Inc., and The Reynolds Company. Furthermore, the website for The Reynolds Company contains a link on the 38ASP webpage entitled "Spec Sheet" that allows viewers to access a Bridgeport-created product brochure that, *inter alia*, promotes the enjoined connectors. Mr. Ambrose testified that it is standard practice in the electrical fittings industry for the manufacturer to create, pay for, and push its product images to distributors to be used for promotional purposes via online applications. (*See* Ambrose Decl. ¶¶ 6-7, Doc. 359.)

     Bridgeport contends that it has taken all reasonable steps to secure the return and destruction of its marketing materials after the injunction issued. (*See* Fourth Suzio Decl. ¶ 17, Doc. 386.) Specifically, Bridgeport's President attests that the company removed all product images of the enjoined connectors from its marketing materials, and "prevented them from being uploaded by a distributor." (*Id.* ¶ 14.) Additionally, Bridgeport asked its independent sales representatives to return any marketing materials pertaining to the enjoined connectors to its printer for destruction. (*Id.* ¶ 15.) Bridgeport also notified Trade Service and IDW, two online applications that push users' product information to subscribing distributors, that images of the enjoined connectors were obsolete, and materials relating to the enjoined connectors should no longer be available for download.

6

(*Id.* ¶ 16.)

The Court finds that Arlington's allegations satisfy the threshold for obtaining a contempt hearing on the issue. The plain language of the 2013 Injunction prohibits Bridgeport from "indirectly . . . causing or inducing others to . . . sell, [or] offer to sell" the enjoined connectors. Arlington has sufficiently alleged that Bridgeport-created stock images of the enjoined connectors are still being displayed on multiple distributors' websites in connection with offers to sell the enjoined connectors. Additionally, at least one website contains a link that allows viewers to access a Bridgeport-created product brochure that promotes the enjoined connectors. These allegations and supporting facts persuade this Court to hold a full evidentiary hearing in order to evaluate whether a finding of contempt is appropriate with respect to the online marketing materials.

**C. The Shipment to Elliot Electric Supply on the Day the Injunction Issued**

Arlington contends that Bridgeport further violated the Injunction when it shipped enjoined connectors to Elliot Electric Supply on March 19, 2013, the day the injunction issued. (*See* Second Suzio Decl. ¶ 13.) The 2013 Injunction was issued at 2:57 P.M. (Clune Decl. Ex. E, Doc. 358-5.). Arlington argues that Bridgeport's counsel became aware of the Injunction at this time and, consequently, counsel's knowledge was imputed to the client. An email sent that evening by Paul Suzio, Bridgeport's President, stated that the company did not become aware of the Injunction until 6:15 P.M. the same day, and instructed its representatives: "Product that has not already been invoiced cannot be shipped." (Suzio Decl. Ex. C, Doc. 353-3.) Arlington suggests the email indicates that the shipment was sent out after 2:57 P.M. on March 19, 2013. (Reply Br. 19.) However, Arlington's speculation is rebutted by the Fourth Declaration of Paul Suzio. Mr. Suzio attested that the shipment to Elliot Electric Supply went out before the injunction was issued. (Fourth Suzio Decl. ¶¶ 5, 7, Doc. 386.) Mr. Suzio also clarified

that a product is "invoiced" only when Bridgeport has confirmed that a shipment has actually occurred. (*See id.* ¶ 4.) Therefore, the instruction in Mr. Suzio's email does not necessarily indicate that Bridgeport encouraged its representatives to ship enjoined connectors despite the issuance of the injunction.

Arlington has failed to make a threshold showing on this basis for contempt. Especially in light of Mr. Suzio's Fourth Declaration, the Court is not persuaded that Arlington's conjectural allegations warrant a contempt hearing with respect to the March 19, 2013 shipment. The Court therefore will not permit Arlington to move forward on this ground for contempt.

**D. Discovery into Bridgeport's Contempt**

Arlington requests discovery into Bridgeport's allegedly enjoined activities so that it may investigate the scope of Bridgeport's violations. (Pl.'s Mot. ¶ 3, Doc. 334.) The Court will grant Arlington's discovery request with respect to the Demo Kits only.

"To obtain discovery based on allegations of civil contempt, [plaintiff] must make a prima facie showing that a court order has been disobeyed." *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 256 F. Supp.2d 228, 229 (D. Del. 2003); *see N.W. Controls, Inc. v. Outboard Marine Co*rp., 349 F. Supp. 1254, 1256 (D. Del. 1972) ("Thus before the Court will permit the discovery . . . [plaintiff] must at least present a prima facie case raising a likelihood that the outstanding injunction is being violated."); *Mass. Union of Pub. Hous. Tenants, Inc. v. Pierce*, No. 78-1895, 1983 WL 150, at *4 (D.D.C. Oct. 19, 1983) ("Before being permitted to take extensive discovery on the issue of compliance with a court's order, the party seeking such discovery bears the burden of making a prima facie case that there has in fact been disobedience of the order.").

The Court finds that Arlington has made a *prima facie* showing of contempt with respect to the Demo Kit Incident only. Accordingly, Arlington is entitled to additional

discovery on the 168 Demo Kits containing an enjoined connector that were identified in Bridgeport's shipping records. (*See* Doc. 353-2.) Arlington is not, however, entitled to discovery into any other allegedly contemptuous conduct of Bridgeport at this time, including the online marketing materials and March 19, 2013 shipping records. Although Arlington has proffered sufficiently definite allegations with respect to the online marketing materials to have the matter raised at a contempt hearing, it has not met its burden of establishing a *prima facie* case of noncompliance meriting discovery on this claim. And, as explained above, Arlington has not sufficiently alleged a violation of this Court's order with respect to Bridgeport's shipment on March 19, 2013 to even raise that claim at a contempt hearing.

## IV. Conclusion

For the above stated reasons, Arlington's Motion for an Order to Show Cause will be granted. Additionally, Arlington's request for discovery will be granted with respect to the Demo Kits only.

An appropriate order follows.


December 7, 2016                                              /s/ A. Richard Caputo
Date                                                                  A. Richard Caputo
                                                                          United States District Judge