**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ARLINGTON INDUSTRIES, INC.,

    Plaintiff,

    v.

BRIDGEPORT FITTINGS, INC.,

    Defendant.

CIVIL ACTION NO. 3:02-CV-0134

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is a Motion filed by Arlington Industries, Inc. ("Arlington") seeking partial reconsideration of the Court's Memorandum and Order granting in part and denying in part Arlington's Motion for an Order to Show Cause. (Doc. 389.) Arlington asks the Court to modify its Order (Doc. 388) to permit Arlington to engage in limited discovery of the online marketing materials concerning the enjoined connectors at issue. Additionally, Arlington asks the Court to clarify its Order as to whether Arlington may take discovery of Bridgeport Fittings, Inc. ("Bridgeport") itself. For the reasons that follow, Arlington's Motion will be granted in part and denied in part. The Court will permit Arlington to engage in limited discovery on its claim regarding the online marketing materials. The Court will grant in part and deny in part Arlington's discovery requests, as specified in the accompanying Order.

### I. Relevant Background

Because the factual and procedural history are both well known to the parties and stated in the Court's prior Memorandum (Doc. 387), they need not be repeated here other than to note the following:

On March 19, 2013, this Court held Bridgeport in contempt of court for violating the Confession of Judgment and Injunction (Doc. 47) signed by Bridgeport and Arlington as part of a 2004 settlement agreement. Specifically, the Court found that Bridgeport's line of connectors known as the "Whipper-Snap" 380SP and 38ASP violated the 2004 injunction, and entered a new permanent injunction (the "Injunction") enjoining:

> [Bridgeport], its officers, agents, attorneys, servants, employees, successors, assigns, and all those in active concert or participation with them . . . from directly or indirectly making, using, selling, offering for sale or import or causing or inducing others to make, use, sell, offer to sell, or import the Whipper-Snap 380SP and 38ASP model connectors during the remaining term of U.S. Patent No. 6,335,488.

On May 10, 2016, Arlington filed a Motion for an Order to Show Cause why Bridgeport should not be held in contempt of Court. (Doc. 334.) Along with its Reply Brief filed on July 5, 2016 (Doc. 361), Arlington submitted a Second Declaration of Thomas Gretz, Arlington's Vice President ("Second Gretz Declaration") (Doc. 360), and a Declaration of Donald Amrbose, Arlington's National Sales Manager ("Ambrose Declaration") (Doc. 359). On July 19, 2016, Bridgeport filed a Motion for Leave to file a Sur-Reply Brief (Doc. 365) accompanied by a proposed Sur-Reply Brief (Doc. 365-1) and a Third Declaration of Paul Suzio, Bridgeport's President and Chief Operating Officer ("Third Suzio Declaration") (Doc. 365-2). The Court denied Bridgeport's Motion for Leave on July 21, 2016. (Doc. 367.) A preliminary hearing was scheduled for November 17, 2016. Prior to the hearing, counsel for Arlington noticed that only the first and last page of the Second Gretz Declaration had been filed. In order to correct this error, Arlington submitted a replacement Second Gretz Declaration on November 15, 2016 ("Replacement Second Gretz Declaration"). (*See* Doc. 390-2.)

At the preliminary hearing, the Court granted Bridgeport permission to respond to the Replacement Second Gretz Declaration. (T.R. 8:8-14, Doc. 385.) On December 1, 2016, Bridgeport filed a Fourth Declaration of Paul Suzio as its response ("Fourth Suzio Declaration"). (Doc. 386.) The Fourth Suzio Declaration states in relevant part:

> 14. After the injunction issued, Bridgeport removed all marketing materials for, and images of, the enjoined connectors from its marketing materials and prevented them from being uploaded by a distributor. Distributors, however, could have uploaded an image onto their website prior to the injunction. Bridgeport has no way of knowing if this occurred and has no control over the actions of any distributor.
> 15. After the injunction issued, Bridgeport sent a notice to its sales representatives asking them to return all of their samples and inventories of various marketing materials to Mansir Printing. A true and correct copy of this email

> dated March 21, 2013, is attached as Exhibit B. Mansir Printing prints most of our collateral advertising materials and we commonly have obsolete materials sent to them for recycling and/or destruction.
> 16. Promptly after issuance of the injunction, and at least by March 20, 2013, Bridgeport also electronically notified both Trade Service and IDW that the Enjoined Products were now obsolete and so images and materials relating to the Enjoined Products were no longer available from those sources for download.

On December 7, 2016, the Court granted in part and denied in part Arlington's Motion for an Order to Show Cause. (Doc. 388.) The Court found that Arlington was permitted to pursue its allegations of contempt against Bridgeport only with respect to the "Demo Kits" containing an enjoined connector and the online marketing materials. The Court further held that Arlington was entitled to discovery on the Demo Kits allegations only.

On December 21, 2016, Arlington filed the instant Motion for Partial Reconsideration. (Doc. 389.) Bridgeport filed its Brief in Opposition on January 9, 2017 (Doc. 393), and Arlington submitted its Reply Brief on January 23, 2017 (Doc. 398). The matter is now ripe for disposition.

## II. Legal Standard

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A motion for reconsideration may be granted if the movant establishes: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court decided the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café, by Lou–Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

## III. Discussion

In its Motion for Partial Reconsideration, Arlington argues primarily that the Court erred in finding that Arlington satisfied the standard for obtaining a contempt hearing on its claim regarding the online marketing materials but failed to meet the standard for obtaining postjudgment discovery on that same claim. (*See* Doc. 391, at 13-14.) Much of

3

Arlington's Brief is dedicated to the issue of whether the Fourth Suzio Declaration went beyond the scope of what the parties agreed to at the hearing[1] and the degree to which the Declaration is reliable. (See id. at 1-2, 4 n.2, 8-12.) But, at bottom, the question presented in Arlington's Motion is: In meeting the standard for obtaining a contempt hearing on its allegations regarding the online marketing materials, did Arlington also satisfy the standard for obtaining postjudgment discovery on that claim? Upon reconsideration, the Court answers that question in the affirmative, and concludes that it erred in finding otherwise.

A. **The Court Will Permit Arlington to Engage in Limited Discovery with Respect to the Online Marketing Materials and Will Clarify the Scope of Discovery**

In order to obtain a contempt hearing on a particular claim, the moving party's show cause motion must allege conduct on the part of the defendant which would violate the Court's prior order. *Wyatt ex rel. Rawlins v. Sawyer*, 80 F. Supp. 2d 1275, 1278 (M.D. Ala. Dec. 13, 1999) (quoting *Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir.

---

[1] At the November 17, 2016 hearing, counsel for Bridgeport represented that they intended to file a version of the Third Suzio Declaration as Bridgeport's response to the Replacement Second Gretz Declaration filed by Arlington. (T.R. 29:20-24 ("They've been aware of it [the Third Suzio Declaration] since July, and I will tell you this is going to be what we will file in response to Mr. – *what we intend to file in response to the now complete declaration of Mr. [Gretz]* . . . .")) (emphasis added). In response to this representation, counsel for Arlington stated: "I think that's great. *If that's their – going to be their response, we have no objection to it* as long as Mr. Gretz can talk about what it is that is in his second declaration then that [Mr. Anderson] just objected to before." (T.R. 30:1-4) (emphasis added). Although counsel for Arlington initially suggested that they only agreed to Bridgeport filing a "short response to [the] seven paragraphs" omitted from the Second Gretz Declaration that was originally submitted (T.R. 7:8-7:16), the subsequent reply to Bridgeport's representation indicated that Arlington had "no objection" to Bridgeport filing a version of the Third Suzio Declaration as its response. Regardless, the Court's disposition of the instant Motion does not rest upon the parties' agreed-to scope of Bridgeport's response.

4

1990)). These allegations must be "sufficiently definite, specific, non-conjectural and detailed enough [for the district court] to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *Sommerfield v. City of Chi.*, 252 F.R.D. 407, 414 (N.D. Ill. 2008). The moving party also must go beyond mere allegations and present some facts that "implicate defendants in violation of the court's order." *Id.* at 413.

In order "[t]o obtain discovery based on allegations of civil contempt, [the moving party] must make a prima facie showing that a court order has been disobeyed." *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 256 F. Supp. 2d 228, 229 (D. Del. 2003); see *N.W. Controls, Inc. v. Outboard Marine Corp.*, 349 F. Supp. 1254, 1256 (D. Del. 1972) ("Thus before the Court will permit the discovery . . . [plaintiff] must at least present a prima facie case raising a likelihood that the outstanding injunction is being violated."). A moving party may fail to meet its burden for obtaining postjudgment discovery if the nonmoving party produces sufficient evidence of compliance with the court's order. *Kifafi v. Hilton Hotels Ret. Plan*, 79 F. Supp. 3d 93, 101 (D.D.C. 2015).

Upon reconsideration, the Court agrees that its prior opinion erred with respect to the issue of discovery. In satisfying its burden for obtaining a contempt hearing on its claim regarding the online marketing materials, Arlington met the threshold for obtaining postjudgment discovery on the alleged violation. *Compare Sommerfield*, 252 F.R.D. at 414, *with Wesley Jessen Corp.*, 256 F. Supp. 2d at 229. In its December 7, 2016 Opinion, the Court concluded that, despite Bridgeport's proffered evidence of compliance with the Injunction, Arlington was permitted to advance its claim regarding the online marketing materials at a contempt hearing. (Doc. 387, at 7.) In so holding, the Court concluded that Arlington had presented some facts in support of its allegations which implicate Bridgeport in violation of the Injunction. (*Id.* at 6.) The Court further concluded that Bridgeport's evidence of compliance was insufficient to conclusively

5

absolve Bridgeport from contempt liability on this claim.[2] (See id. at 7.) And, upon reconsideration, the Court concludes that limited discovery on this claim is therefore warranted.

Accordingly, to the extent that the Court's December 7, 2016 Memorandum and Order denied Arlington discovery on its contempt claim regarding Bridgeport's online marketing materials, that section will be vacated. Additionally, Arlington notes that the Court's prior Order did not specify the scope of discovery that it may take of Bridgeport itself. In order to avoid more discovery disputes in the future, in addition to specifying the limits of discovery with respect to the online marketing materials, the Court will clarify and limit the permissible scope of discovery of Bridgeport in its accompanying Order. To the extent Bridgeport now requests "similar" discovery of Arlington (Doc. 393, at 19), Bridgeport has proffered no legal basis for such a request, much less any specific evidence it seeks to discover or reasons for why discovery is necessary. Cf. Fed. R. Civ. P. 56(d) (requiring a nonmovant to advance "specified reasons" that demonstrate the requested discovery is necessary in order to "present facts essential to justify its opposition"); see Caner v. Autry, 16 F. Supp. 3d 689, 701 (W.D. Va. 2014) ("[A] party 'cannot simply demand discovery for the sake of discovery.'" (quoting Hamilton v. Mayor & City Council of Balt., 807 F. Supp. 2d 331, 342 (D. Md. 2011)). Accordingly, Bridgeport's request will be denied.

**B. Arlington's Theory of Contempt**

There is a dispute as to whether Arlington states a claim of contempt with respect to its allegations regarding the online marketing materials as a matter of law. The disputed theory of contempt, as understood by the Court, can be fairly stated as follows: Bridgeport was required to take reasonable steps to ensure that its distributors removed certain online marketing materials promoting the enjoined connectors that Bridgeport

---

[2] As previously noted, whether Bridgeport may avail itself of the substantial compliance defense or any other affirmative defense will be decided after the contempt hearing. (See Doc. 387, at 5.)

6

created and supplied from their websites, regardless of when Bridgeport created and distributed these materials. (*See* Br. in Supp. Mot. for Order to Show Cause 11, 15, 18(b), Doc. 337; *see also* Doc. 334, at 2(b); Doc. 361, at 17; *see, e.g.*, T.R. 155:4-10; 189:4-190:3, Doc. 385.) Bridgeport claims that this theory of contempt was first raised in Arlington's Reply Brief to its Show Cause Motion, and therefore Bridgeport has never had an opportunity to address the merits of this theory. (Doc. 393, at 9-10 n.2.) Additionally, Bridgeport now argues that this theory of contempt is not cognizable as a matter of law because the terms of the Injunction do not require Bridgeport to take affirmative steps to retrieve Bridgeport-created product images or marketing materials related to the enjoined connectors from its distributors' websites after the Injunction issued. (*Id.* at 16-17.)

Despite Bridgeport's contentions, the Court takes this opportunity to expressly hold that Arlington's theory of contempt regarding the online marketing materials was sufficiently raised in its original Motion and accompanying Brief. Accordingly, Bridgeport's claim that it was never afforded an opportunity to respond to Arlington's contempt theory concerning the online marketing materials is unavailing. As just noted above, Arlington sufficiently raised this contempt theory in the Brief in Support of its original Motion, to which Bridgeport had an opportunity to respond. (*See* Br. in Supp. Mot. for Order to Show Cause 11, 15, Doc. 337 ("[B]y creating and providing . . . marketing materials that include . . . images of the [enjoined] connectors for use in sales or offers to sell the [enjoined connectors] either online or in person, Bridgeport is causing or inducing its distributors to sell and/or offer [the enjoined connectors] for sale, in direct violation of the Injunctions," and therefore Bridgeport must ensure that "its distributors remove any references to the enjoined [connectors] from their websites" in order to be "deemed in compliance with the Injunctions"); *id.* at 18(b) (requesting the Court sanction Bridgeport for noncompliance until Bridgeport requires its distributors to remove any marketing materials concerning the enjoined connectors from their websites); *see also* Doc. 334, at 2(b).) Additionally, Bridgeport's proposed Sur-Reply Brief attached to its

7

Motion for Leave (Doc. 365-1) did not raise the instant legal argument in opposition to Arlington's contempt theory despite the fact that Arlington clearly advanced this theory in its Reply Brief (see Doc. 361, at 17), as even Bridgeport admits (see Doc. 393, at 9-10 n.2). Thus, insofar as Bridgeport claims that the Court's denial of its Motion for Leave prevented it from presenting this argument at an earlier juncture (see id. at 3), this claim is amiss. Furthermore, whereas Arlington reiterated its contempt theory clearly at the preliminary hearing (see, e.g., T.R. 155:4-10; 165:4-17; 189:4-190:3 ("[Bridgeport is] continuing to permit these distributors to use advertising that Bridgeport created to help assist and induce the sales. That's what is precluded. . . . That's why the injunction says . . . directly and indirectly causing and inducing")), to the extent Bridgeport argued that the terms of the Injunction do not encompass this allegedly contumacious conduct as a matter of law, this argument was not presented with the same degree of clarity at the hearing.

Accordingly, Bridgeport's contention that Arlington's theory is "untimely" is simply inaccurate.[3] To the extent Bridgeport suggests that this argument has been waived, the Court disagrees. See *Ripberger v. Corizon, Inc.*, No. 1:11-cv-01394, 2012 WL 4340716, at *1 n.1 (S.D. Ind. Sept. 20, 2012) (noting the plaintiff's reply brief "expanded upon and clarified" the original motion but "did not raise wholly new arguments," and also noting that oral argument "provided Defendant a full and fair opportunity to respond to the arguments addressed in Plaintiff's reply"); see also *United States v. Davis*, 602 F.3d 643, 648 n.7 (5th Cir. 2010). Instead, Bridgeport attempted to raise the instant

---

[3] The Court recognizes that one of Arlington's original theories of contempt with respect to the online marketing materials was grounded upon allegations of a "bait-and-switch" scheme. (*Compare* Doc. 337, at 12-13, 17 (advancing a theory of contempt predicated upon a "bait-and-switch" scheme), *with* Doc. 361, at 9, 17-18 (arguing that Bridgeport violates the Injunction by "failing to ensure that its own marketing materials were removed from the Distributors' websites," and silent as to the "bait-and-switch" theory).) Nevertheless, Arlington's original Motion and accompanying Brief sufficiently raised the presently-disputed theory of contempt. (Doc. 337, at 11, 15, 18(b); *see also* Doc. 334, at 2(b).)

8

opposition argument for the first time in its Brief responding to this Motion. (Doc. 393, at 16-17.)[4] Of course, the only motion presently before the Court is Arlington's Motion for Partial Reconsideration, to which the Court's inquiry is narrow and circumscribed to whether the moving party meets its burden for obtaining relief. See *Veolia Water Sols. & Techs. N. Am., Inc. v. Aquatech Int'l Corp.*, No. 10-484, 2015 WL 6957946, at *1-*2 (W.D. Pa. Nov. 10, 2015). Because Bridgeport's argument would necessarily require the Court to reconsider its original conclusion that Arlington may pursue its claim regarding the online marketing materials at a contempt hearing–a question which is not properly before the Court on Arlington's Motion–the Court declines to address the argument at this juncture and will consider only the requests made by the moving party in the instant Motion. Indeed, considering that a party moving for reconsideration may not raise a new legal theory in support of its motion, it would be improper to allow Bridgeport to now challenge the legal sufficiency of Arlington's contempt theory under a new legal argument presented for the first time in its Brief. See *Federico v. Charterers Mut. Assur. Ass'n Ltd.*, 158 F. Supp. 2d 565, 578 (E.D. Pa. 2001) (noting the court is "precluded" on a motion for reconsideration from considering a new argument that could have been raised previously). Accordingly, the Court will proceed forward with the contempt hearing as to this claim. However, Bridgeport is not foreclosed from raising this argument at the hearing prior to the Court's ruling on the issue of contempt.

### IV. Conclusion

For the above stated reasons, Arlington's Motion for Partial Reconsideration (Doc. 389) will be granted in part and denied in part. The Court will permit Arlington to engage in limited discovery with respect to its contempt claim regarding the online marketing materials allegedly created and distributed by Bridgeport to its distributors for the promotion of the

---

[4] The Court ordered additional briefing on this issue to ensure that each party had an opportunity to address the matter thoroughly prior to the contempt hearing. (*See* Doc. 403.)

enjoined connectors. The Court will also clarify its Order with respect to the scope of discovery of Bridgeport itself. However, the Court will deny in part Arlington's discovery requests, as specified in the accompanying Order.

An appropriate order follows.

March 29, 2017
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge